## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ARTWORKSTUDIO, INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **Case No. 12-2207-JAR** |
| NEIGHBORHOOD ) | |
| HOSPITALITY, INC., *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

This comes before the Court on the Defendants' Motion to Dismiss (Doc. 7) for lack of personal jurisdiction. This is an action for breach of contract, quantum meruit, fraud and conversion brought by Plaintiff Artworkstudio, who is in the business of designing and producing artwork and decor, against Defendants, who are in the business of owning and operating Applebee's franchise restaurants in four states, but not in Kansas.

The Court concludes that it has no personal jurisdiction because Defendants did not have sufficient minimum contacts with the forum state of Kansas. Plaintiff contracted not with Defendants, but with Peterson Construction, LLC ("Peterson"), the general contractor on Defendants' construction and remodel of restaurants. This action stems from Peterson's failure to pay Plaintiff for artwork and decor that Plaintiff supplied to Peterson, and Defendants' subsequent failure to respond to Plaintiff's demands for payment. Even if Defendants' later conduct constituted an oral agreement to directly pay Plaintiff for invoices Peterson had not yet paid, such agreement was not in writing, and is unenforceable. Moreover, even if Defendants

1

and Plaintiff had an enforceable contract with a nexus to Plaintiff's claims in this action, that alone, under these facts, did not establish sufficient minimum contacts.  Finally, even if Plaintiff could establish the requisite minimum contacts, Defendants have satisfied their burden of showing a compelling case, based on other considerations, that would render the exercise of personal jurisdiction offensive to traditional notions of fair play and substantial justice in this case.  Accordingly, the Court grants the Defendants' motion to dismiss.

I.     **Background**

Plaintiff originally filed this action in the District Court of Wyandotte County, Kansas; Defendants subsequently removed it to this Court.  According to Plaintiff's Verified Petition, Plaintiff Artworkstudio is a Missouri corporation with its office located in Wyandotte County, Kansas.  Defendants are: Neighborhood Hospitality, Inc., a Kentucky corporation with its principal place of business in Kentucky; Woodland Group, Inc., an Indiana corporation with its principal place of business in Kentucky;  Employee Resource Group, LLC, a Florida limited liability company with its principal place of business in Kentucky; and Theresa Hammonds-Johnson, a resident of Kentucky.

This is an action for breach of contract, quantum meruit, fraud and conversion, stemming from what the Petition alleges were "a series of contracts" between the Plaintiff and Defendants whereby the Defendants contracted with Plaintiff to perform and provide Applebee's approved artwork and decor for 27 Applebee's restaurants located in West Virginia, Kentucky, Tennessee and Ohio.

## II.     Standards for Personal Jurisdiction under Rule 12(b)(2).

Plaintiff has the burden of establishing personal jurisdiction over defendant.[1]  In the absence of an evidentiary hearing, plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[2]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[3]  Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[4]  When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[5]  The court resolves all factual disputes in favor of the plaintiff.[6]  Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7]  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would

---

[1]*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[2]*AST Sports Sci., Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1056-57 (10th Cir. 2008); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[3]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (citing *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1286 (10th Cir. 2007); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[4]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[5]*Pytlik*, 887 F.2d at 1376.

[6]*Dudnikov*, 514 F.3d at 1070.

[7]*Behagen*, 744 F.2d at 733.

render jurisdiction unreasonable.'"[8]

## III.    Discussion

### A.    No Prima Facie Showing of Specific Jurisdiction- Minimum Contacts

Because there was no evidentiary hearing in this case, Plaintiff need only make a prima facie showing of jurisdiction to defeat Defendants' motion to dismiss.[9]  To establish personal jurisdiction over a defendant, plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process.[10]  The Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, therefore the Court proceeds directly to the constitutional analysis.[11]

The due process analysis is comprised of two steps.  First, the court must consider whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there."[12]  For the court's exercise of jurisdiction to comport with due process, defendant must have "minimum contacts" with the State of Kansas, "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"[13]  "Minimum contacts" can be established in one of two ways, either generally or specifically for lawsuits based on the forum-related activities:

---

[8]*OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[9]*AST Sports*, 514 F.3d at 1056-57.

[10]*Intercon, Inc., v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

[11]*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc. v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

[12]*Emp'rs Mut. Cas. Co.*, 618 F.3d 1159-1160 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[13]*Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

> General jurisdiction is based on an out-of-state defendant's
> "continuous and systematic" contacts with the forum state, and
> does not require that the claim be related to those contacts.
> Specific jurisdiction, on the other hand, is premised on something
> of a quid pro quo: in exchange for "benefitting" from some
> purposive conduct directed at the forum state, a party is deemed to
> consent to the exercise of jurisdiction for claims related to those
> contacts.[14]

Plaintiff does not allege general jurisdiction, but alleges that Defendants had minimum contacts with Kansas based on specific jurisdiction. This requires the Plaintiff to show that Defendants "purposefully directed" their activities at residents of Kansas and that Plaintiff's injuries "arise out of" Defendants' forum-related activities.[15]

Plaintiff contends that there is such purposeful availment, in that it has a "series of contracts" with Defendants to supply artwork and decor for restaurants owned by Defendants. Attached to Plaintiff's Petition are a number of invoices from Plaintiff to Defendant Neighborhood Hospitality, Inc., or Defendant Woodland Group Inc., purporting to show amounts that these Defendants owe Plaintiff for artwork and decor that Plaintiff supplied. Artfully, Plaintiff's Petition does not allege that Defendants entered into agreements with Plaintiff to obtain and pay for these goods. Rather, the Petition avers that Peterson Construction, LLC, "on behalf of Defendants," initiated contact with Plaintiff and entered into agreements for Plaintiff to provide Defendants with the artwork. The Petition alleges three such agreements, spanning May 2010 to September 2010, for a total of 27 projects.

The existence of a contract between Plaintiff and Defendants is critical to the Court's analysis of minimum contacts. Absent a contract, Plaintiff relies on no other conduct to establish

---

[14] *Id.* at 1078 (internal citations and quotations omitted).

[15] *Shrader v. Biddinger*, 633 F.3d at 1239 (citing *Dudnikov*, 514. F.3d at 1071).

5

minimum contacts.  The Court must generally accept as true Plaintiff's allegations, in determining whether Plaintiff has established a prima facie showing of jurisdiction.[16]  At the same time, the Court does not have to accept as true conclusory allegations, such as Plaintiff's allegation that it has "a series of contracts" with Defendants.

Here, Defendants have come forward with competent proof challenging personal jurisdiction.  Defendants have produced the *same* invoices that are attached to Plaintiff's Petition, except that the invoices Defendants have produced show that they are billed to Peterson, not to Defendant Neighborhood Hospitality, Inc. or Defendant Woodland Group, Inc. Defendant has submitted the affidavit of Aroma L. Bates, the Director of Finance and Strategic Planning for Defendant Employee Resources Group, in which Mr. Bates avers that after Defendants became aware that Peterson was not paying Plaintiff and other subcontractors, Defendants filed a lawsuit against Peterson.  In the course of assembling information for Defendants' lawsuit against Peterson, Mr. Bates asked Plaintiff to provide him with copies of the invoices that Peterson had not paid to Plaintiff.  In response, Plaintiff sent invoices, which are attached to Bates' affidavit, and which show that Plaintiff billed Peterson, not Defendants.  Thus, Defendants allege that the invoices Plaintiff attached to its Petition were altered by Plaintiff, to misrepresent with whom Plaintiff contracted.

Other competent evidence submitted by Defendants corroborates this serious charge.[17] Not only have Defendants sued Peterson, Plaintiff sued Peterson.  And, Defendants have produced Plaintiff's Petition in the action it filed in 2011 against Peterson in Wyandotte County

---

[16]*Dudnikov*, 514 F.3d at 1070 (citation omitted).

[17]Defendants pointedly contend that Plaintiff altered the invoices, not that Plaintiff's counsel was involved or aware of the alteration.

District Court Case 11 CV 954, styled Artworkstudio, Inc. v. Peterson Construction, LLC.  In its action against Peterson, Plaintiff attached invoices to its petition that match the invoices Plaintiff provided to Mr. Bates, that is, invoices showing Peterson as the billed party, not Defendants.

Moreover, the Court has compared Plaintiff's Petition in the instant action with Plaintiff's Petition in its action against Peterson, and finds that while the petitions are largely the same, there are notable differences.  First, in the instant Petition, Plaintiff claims that this action "arises from a series of contracts between Plaintiffs and Defendants," and that Plaintiff entered into agreements with Peterson who was "acting on behalf of Defendants."  But in its action against Peterson, Plaintiff claimed that it contracted with Peterson, and Plaintiff did not allege that Peterson was acting "on behalf of Defendants."  Secondly, in the instant Petition, Plaintiff claims that as the initial projects were completed in September 2010, Plaintiff confirmed payment terms with Defendants and Defendants promised to pay Plaintiff.  But in its action against Peterson, Plaintiff claimed that Peterson failed to pay Plaintiff, even after Plaintiff 'confirmed invoicing and payment terms with [Peterson] and [Peterson] promised to send payment to [Plaintiff]."   Indeed, in its Petition in its action against Peterson, Plaintiff does not mention the Defendants at all.  Finally, Defendants produced the Journal Entry of Judgment Plaintiff obtained in its action against Peterson.  Plaintiff obtained a judgment against Peterson in the amount of $285,072.03.

Countering Defendants' allegations and evidence, Plaintiff submits the affidavit of its owner, Kathleen Van Becelaere, who avers that in December 2010, she and Defendant Theresa Hammonds-Johnson conversed about the fact that Plaintiff had not received payment for a number of projects.  Ms. Van Becelaere avers that Defendants agreed to make payments directly

to Plaintiff, and that Defendants confirmed their promise to make full payments to Plaintiff. While the Court is to resolve disputed facts in favor of Plaintiff at the prima facie stage of a Rule 12(b)(2) motion, the Court seriously doubts that Plaintiff has established even a prima facie case of personal jurisdiction.  First, Plaintiff does not show that it contracted with Defendants.  Other than its conclusory statement that it has a series of contracts with Defendants and its conclusory statement that Peterson was acting "on behalf of" Defendants, Plaintiff produces no evidence other than the invoices which Defendants claim were altered.

But, if the Court accepts the invoices attached to Plaintiff's Petition in the instant action as competent, unaltered evidence that Plaintiff contracted with Defendants, Plaintiff's prima facie showing fails.  At best, the Court can only find that Plaintiff made an agreement with Defendants in September 2010, when Defendants purportedly promised to fully pay Plaintiff for the unpaid invoices.  Plaintiff offers no evidence that it contracted with Defendants at the outset.  And, to the extent that Defendants did enter into an agreement to pay Plaintiff for the unpaid invoices, such an agreement must be in writing, under Kansas law.  For K.S.A. § 33-106 precludes an action "to charge a party upon any special promise to answer for the debt, default or miscarriage of another person," unless such agreement is "in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing."[18]  In her affidavit, Ms. Van Becelaere avers that in January 2012 she sent a letter to Defendants demanding payment and asserting that the Defendants had ordered and confirmed their order of product from Plaintiff.  But Defendants never responded to Van Becelaere's letter. In other words, Plaintiff has produced no written agreement with Plaintiff evidencing any

---

[18] K.S.A. § 33-106.

agreement that Defendants would pay for the outstanding invoices.  Rather, Plaintiff only

produced an April 28, 2011 email from Defendants' General Counsel, Bruce Duba, which stated

that

> we are going to try to pay you and other suppliers a portion of what Bruce
> [Peterson] misappropriated as cash flow permits.  We feel really bad about what
> happened, but again want to make it clear that we paid Bruce above and beyond
> what we were legally or morally obligated to pay.  Bruce has admitted to us in
> writing and in voicemails that he 'robbed Peter to pay Paul' meaning that he used
> money we gave him to pay subs and suppliers on previous jobs and that he has
> been doing this ever since the economy turned a few years back.

In short, Plaintiff has failed to produce competent evidence countering the competent

evidence that Defendants produced that shows that Plaintiff did not have a contractual

relationship with Defendants.  And, absent a contract, Plaintiff cannot show that Defendants

engaged in activities purposefully directed at Plaintiff in Kansas.  Furthermore, given that

Plaintiff claims it was injured by not being fully paid for its goods and services, Plaintiff also

cannot show that its injuries arise out of any contract with Defendants.

To be sure, it is a light burden Plaintiff shoulders in establishing a prima facie showing of

personal jurisdiction, and factual disputes are to be resolved in Plaintiff's favor.  Nonetheless,

the Court should not accept as true conclusory allegations, nor incompetent evidence.  But even

if Plaintiff had established that it was in a contractual relationship with Defendants, that alone is

insufficient to establish the requisite minimum contacts in the forum state.  Here, Plaintiff claims

that Defendants contracted with Plaintiff to purchase artwork and decor manufactured or sold by

Plaintiff in Kansas and that Defendants failed to pay Plaintiff, in breach of their contract.

But, contracting to purchase product from a Kansas manufacturer or seller, alone, does not

establish the requisite minimum contacts with the forum state.[19]

The court must examine both the quantity and quality of defendants' contacts with the forum state.[20]   For the defendant will not be subjected to the laws of a jurisdiction based only on random, fortuitous or attenuated contacts.[21]   Nor will the defendant be subjected to the laws of a jurisdiction solely as the result of the unilateral activity of another party or third person.[22]

The Tenth Circuit noted in *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,*[23] that the minimum contacts analysis requires a determination "whether a nexus exists between the Defendant['s] forum related contacts and Plaintiff's cause of action; and that although courts generally follow one of three approaches, in contract actions, the Tenth Circuit has consistently applied 'the more-restrictive proximate-cause approach.'"[24]   That is to say, the court must analyze "whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claims."[25]   Defendants allege that their contacts, if any, are random, fortuitous or attenuated.   Defendants not only deny the existence of a contract with Plaintiff, Defendants argue that any phone or email communications they had with Plaintiff to direct the design of the decor, were random and attenuated contact.   Defendants maintain such communications have no nexus to Plaintiff's claim for breach of contract for nonpayment.   The Court agrees.   Moreover, even if

---

[19]*Midwest Mfg., Inc. v. Ausland*, 273 P.2d 804 (Kan. App. 2012).

[20]*Id.*

[21]*AST Sports*, 514 F.3d at 1058.

[22]*Id.*

[23]618 F.3d 1153, 1161 (10th Cir. 2010).

[24] *Id*. at n. 7

[25]*Id.* (citing *Dudnikov*, 514 F.3d at 1078).

Plaintiff and Defendants entered into a contract later, in which Defendants agreed to pay for unpaid invoices, there still is no showing that Defendants purposely availed themselves of the privilege of acting in Kansas.  Rather than purposeful availment, Defendants were merely reacting to problems stemming from Peterson's nonpayment.

**B.      No Prima Facie Showing that Personal Jurisdiction would not offend traditional notions of fair play and substantial justice.**

Nonetheless, assuming that Plaintiff has shown that Defendants had the requisite minimum contacts, jurisdiction fails under the second step of the due process analysis, because subjecting Defendants to jurisdiction in the forum state would offend traditional notions of fair play and substantial justice.[26]   In this second step, the defendant bears the burden of presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable.[27]  This requires the weighing of five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies.[28]  Further, in this second step of the analysis, the court should consider the strength of the defendant's minimum contacts.[29]

In this case, Defendants' burden is considerable.  They have had no general contacts in

---

[26]*See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1161.

[27]*Id.* (citing *Dudnikov*, 514 F.3d at 1080).

[28]*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[29]*TH Agric. & Nutrition*, 488 F.3d at 1292.

this state, and their only contacts with Plaintiff have been by phone and email, to discuss Defendants' design and decor directives, and Peterson's nonpayment.  Defendants have had no other contacts with Plaintiff in this state.  On the other hand, litigating this action in Kansas, is obviously more convenient for Plaintiff.  That the forum state has some interest in resolving this dispute is evident, at least the forum state had an interest in resolving the dispute between Plaintiff and Peterson.  But the fact that there is such strong evidence that Plaintiff's contract was with Peterson, not with Defendants, and that any later contract with Defendants is unenforceable because it is not in writing, weighs heavily in this case.  For the interstate judicial system has an interest in efficient resolution of justiciable controversies between the real parties-in-interest. Moreover, Peterson's liability to Defendants, for failure to pay Plaintiffs and other subcontractors, is already being litigated in another forum — federal court in the Southern District of West Virginia.  And, Peterson's liability to Plaintiff has already been established in a state court action in Kansas; indeed, Plaintiff has a judgment against Peterson.  Finally, as Defendants posit, the fifth factor weighs in Defendants' favor.  While the states have a shared interest in furthering fundamental social policies, one of those policies is surely the litigation of real controversies, by real parties-in-interest, based on legitimate documents, not documents altered for purposes of litigation, such as the so-called contracts in this case.  Moreover, given the Plaintiff's positions taken in its action against Peterson, and the inconsistent positions taken in this action against Defendants, as to whom Plaintiff contracted with, the Court is mindful that the doctrine of judicial estoppel[30] is but one more reason that on balance, the Court must

---

[30]Judicial estoppel is an equitable doctrine, which protects "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (quotation omitted).

conclude that Defendants have established a compelling case that this Court's exercise of jurisdiction in this case would offend traditional notions of fair play and substantial justice.  For these reasons, the Court grants Defendants' motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 7) is **GRANTED.**

**IT IS SO ORDERED.**

Dated: June 21, 2012

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE